Good morning. May it please the Court, Michael Smatley. Mr. Goodin. Could I ask you, I don't want to get into your legal argument, but just as a point of information, one of the arguments that's made here goes to the calculation of the guidelines. Does it matter, as I read this, if the whole spam count is thrown out, he's still left with a 70-month sentence on all the other counts that he was sentenced on? And so isn't the argument about the guideline calculation moot? I just want to know if I'm right, and then you can go on to your argument. Well, it's not moot for two reasons. You're right in that it doesn't appear to affect his sentence very much. I'm only asking you about that. I realize it's not moot in terms of all the substance. It has an effect on the guidelines in that he got two levels based on that count for mass marketing. But his total sentence was 70 months. It was beneath the guideline sentence. No, no, but he got 46 months on counts one to six, according to what I've written down, and he got 24 months on count seven to run consecutively, so that even if we agreed with you, he'd be left with the same 70-month sentence. Isn't that right or wrong? That is under terminal. We would send it back for a correction. On the guideline range, the advisory guideline range would be lower. Obviously, it would still be higher than what he got, but under the law of this circuit, because the guideline range had been incorrectly calculated, it would be remanded. So you're hoping that the judge would rethink the whole thing? Correct, and also it does, obviously, convictions are not insignificant, and if he has a conviction for something that he contends not to do. You're right. I'm not suggesting that your main argument is moot at all. It survives. I'm just asking whether we have to get involved in this. Particularly, the judge was careful with his sentence. He didn't give one sentence, as is common for all counts. He broke up the sentence count by count, and you're not even appealing from those counts, and he's got a 70-month sentence on those counts, and you want us to go in and get involved in a fairly complex issue of whether the guidelines for count four were properly done? No, I don't. That's peripheral, and I actually want to address the loss issue because that is obviously more meaningful to my client. Of that loss, just over a million dollars, 987,000 of it was attributed to computer time. Is that for this count? Does the restitution depend on this count? No. The restitution, I assume, is connected both to this count and the wire fraud counts. Now, the only documentation for that was, one, a statement by an Earthlink employee that they suffered a million dollars in loss, with absolutely no factual explanation for where that came from. And the problem is that the Earthlink representative testified at trial and was subject to cross-examination on the amount of impact to Earthlink. We got around to sentencing, and I've read the PSR, I've read the transcript, and I can't find any meaningful challenge to the Earthlink testimony at trial or the submission, which was slightly more refined, in connection with the sentencing proceeding upon which the district court relied. I realize that the defendant said something like, the math was fuzzy. And this is ridiculous. But if I were sitting in the shoes of the district judge in the face of, it's fuzzy, I would have no clue what to do about it except to say the government submission stands. Well, it is the government's burden in the first instance to prove loss. Indeed, and they did. I mean, they put on a bunch of numbers. And I'm not saying whether they were flawed or not flawed. I'm just saying the government made a submission, and there was no counter to it. There was neither a formal objection to it. There was not a proffer of another expert to counter it. There was nothing to say that any part of that calculation, apart from being fuzzy, was in error. We have to go through this chronologically. She testified at trial that there was a million-dollar loss. Of course, that issue was not a consequence to the guilt. I understand. Then the PSR just merely adopts that figure without documenting it at all. Correct. The defense objects, saying that this is a fiction. There's not a process in front. It is crazy. There's no connection between that figure. My point here, Mr. Smonka, is that that's just a word. I mean, in essence. But the Court has an independent duty to verify. Sure. And as a judge, I sit there and I read this whatever it is, 15-page calculation. I sat through the trial. I heard the Earthling representative testify. I heard cross-examination. And I say to myself, there's no contest here. There's nothing to challenge this. Your Honor, don't you read this and say, okay, where does this number come from? This number comes from the cost that Earthlings spent to buy their computers. Well, I know. That strikes me as being fairly silly. But there's nobody who said that. I mean, there's not a soul at the sentencing hearing who said that. The math was fuzzy. It does not communicate that you had no causal connection established between Earthling's use of its servers and the calculation of loss, which is what your pitch on appeal is. There's no place in the record where those words are even vaguely used. Well, there was a suggestion that Earthling – I mean, there was a statement, Earthlings suffered no loss. Now, it's up to the government to prove that it's – Yes, because it was a company, and it's got to pay its employees anyway. Now, that doesn't – Well, and it's a company that has to buy its computers anyway. Mr. Gooden's conduct did not cause them to buy these computers. They bought these computers as a cost of doing business. Mr. Tanaka, if arguendo, if we agree that the numbers that were submitted by Earthling in this were absurd on their face, just absurd, it couldn't possibly be right, can you show us, refer us to any case or any statute that suggests that if the defense has not raised a contrary argument other than saying it was fuzzy math, that we have an independent obligation as a review, a court of review, to go through and make the calculation ourself, and even a right to do that, and indicate that this should be reversed because the underlying math is absurd on its face? Well, I'll submit that it's – You can do it under any case that says clear error. The standard is clear error. Do we independently have that right? Does the clear error have to be shown by you, or is that something that we independently can do? I'll submit that. See, there's no case, is there? There's no case. Well, there's plenty of cases where the court of appeals has reversed a finding either on loss or restitution based on clear error. I understand that. But in those cases, don't they always involve situations where the defense, if that's which side you're talking about, has produced evidence that shows that it's just wrong, and we agree with them on appeal. What Judge Reimers asks you, and I'm asking you, is even if we find this to be absurd, which I do, it's absolutely absurd. Basically, you're saying you used all 66 servers for all those 200 and whatever days, and your client is charged with that. It's absurd. But I'm asking you, is there any case law that says that if you didn't raise that point, and you didn't bring this to the attention of the trial court, that we have an independent right as a court of review to make that calculation and to apply that determination for the benefit of your client on review? Well, at the very least, you have obligation to remand. Why? The issue has been raised. The issue of loss was clearly raised. Now, this specific attack on these particular numbers, do they appear on the record? No, they don't appear on the record. But didn't your client himself at the sentencing say that the figures are highly exaggerated, grossly inflated, and, quote, the reported loss consists of 260 days of use of Earthlink's mail servers, although during the trial it was less than 10 days of server usage brought into evidence. Doesn't that come awfully close? Yeah, I believe so, Your Honor. You didn't hit it right on the head, but the concept is there, that this is so absurd on its face that he really shouldn't have had to say very much, and it's so absurd on its face that this court cannot let it stand. This would be as if he had committed this crime using, you know, FedEx instead of our e-mail, and the district court had assessed the cost of FedEx for buying their planes. It's exactly analogous. And just on its face, it is so fantastic that I don't believe this court needs any more evidence. The government just clearly did not carry their burden here, and the district court clearly erred in finding this amount of loss based on this conduct. There is no causal connection at all demonstrated in any of those documents that they provided that ties this loss or this figure to anything that Mr. Gooden did, at least the nine hundred eighty six thousand dollars attributed to computer time. I want to spend like one minute on the can spam because, again, this is a clear example of the government charging something. It's clearly a crime, but something that didn't fit the language of the statute is extraordinarily clear. It's targeted to e-mails, spam e-mails, junk e-mails. And it was not targeted to fraud. It says promotion or advertisement of a commercial service. None of these e-mails could be fairly characterized as that. All the regulations show that. And for that reason, that conviction just can't stand. And that's a very clear example of the government, obviously, doesn't affect this crime any, but it's still an improper conviction. So we may need to revoke it. OK. Good morning. I please the court, Daniel Levin, on behalf of the government. I want to start with an explanation of why the loss calculation or restitution amount can stand in the face of just obvious absurdity. I don't think it's absurd. I think the questions he's raising are legitimate questions, but they weren't raised in the district court. So I don't have a record to stand here and answer them directly. What we do have, though, is we have trial testimony saying this loss was $1 million. And it's not just the $1 million loss. Ms. Rogerson actually explained how they put together approximately 70 different IP addresses, how they linked up approximately 70 different accounts that were sending the phishing e-mails. But his argument is that the loss wasn't material at the trial, so arguably there was no real need to go into deep attack on it. Is that true? Well, the loss amount was charged in the mail fraud counts, and that's why the district court admitted it was relevant to those counts. That's why it came in at all. There was a sidebar, and that's why she let it in. So there was a relevance to it, and there was certainly an opportunity to cross at that point. What was its relevance even on the mail fraud count other than that there was a monetary loss? Is that it? It's because of monetary loss. It could have been $5,000, and you would have satisfied. No, you're correct. The amount of loss obviously isn't an element of the count. It did come in. It did come in without an objection. But moreover, it was the basis on which the TSR found the loss. So clearly the point of sentencing, the trial testimony is now relevant. And again, there's no effort to impugn that or controvert that. Instead, the argument and the thrust of the argument isn't this is fuzzy math or isn't that it should be the server time should have been calculated differently. The thrust of the argument is defendants should only be responsible for the $6,000 in money he stole. That's really the thrust of defendant's argument sentencing. That's what everyone's focused on. That's what the district court is focused on. It went beyond that. What I just read from the defendant's own lips went beyond that. He did say he complains about the loss consists of 268 days, and he says it was less than 10 days of server usage was brought into evidence. This is all concocted to make this look like a case that should have been brought on that particular count. Your Honor, I just don't think that's accurate. I think what we have here is Earthlink is saying these servers, excuse me, these e-mails are passing through our servers over this date range. And there's trial testimony of that and then in the loss grids that are submitted. And the fact of the matter is it could be that these e-mails are, there's a danger of corrupting the servers, that there's a reason why they think that this is, that it really is damaging, endangering the servers in a certain way. Why would you object to a remand to thresh this out? I mean, here you have three judges of the court who think that this calculation is absurd. You represent the sovereign. Why is it in your interest to just argue waiver? Why wouldn't you be concerned about a just result in this case? And wouldn't a just result be a remand? Your Honor, I mean, obviously we could go back and do the sentencing again. I'm not talking about the whole sentencing. We're talking about this particular issue. The problem is we have a situation where the defendant just waits and now on appeal has sort of a new set of questions, but we don't typically. He's got a constitutional right to the effective assistance of counsel, which judges are obligated to see as accorded to him. And quite frankly, if a proper objection wasn't made, there's an argument to be made that counsel was ineffective. But why do we have to go through all of that when it seems to me the perfectly just remedy here, which you should not be opposing as a representative of the sovereign, is to remand so we get a correct figure here? Well, I think all I can say, Your Honor, is that the government opposed a remand just on the basis that this isn't how we do appellate procedure, that we don't just go back and redo things. So you want them to bring a 2255 and allege ineffective assistance of counsel. There's no strategic reason that anybody could think of why counsel would not have objected to it, and ultimately it would lead to the same result, it seems to me. So why don't you just do the right thing? That may well be it. I don't want to get ahead of ourselves and say that, you know, I don't know what an ineffective assistance claim would look like in a 2255 here. It's quite clear. I think that it's the government's position that it shouldn't go back based on the fact that there was, the government put forward evidence that laid out the loss, and it's all clear. There's no hiding the ball of how Earthlink got to these numbers. It's laid out in these forms. This evidence is out there. The district court relied on it without any significant objection from defense counsel or defendant. For us to say, well, the district court ought to go redo it now because there's new claims, isn't really. Let's go beyond. I agree with Judge Corman on this, but let's go to another issue that's raised in this matter, and that is the jury instructions. When you look at the statute in this and read what commercial electronic mail message is, how that is defined, and then you look at the jury instruction, it is vastly overbroad compared to the statute. It really allows you to bring in what this defendant was alleged to have done where it would not otherwise have normally fit within the definition of the statute. Why is that not reversible error? Well, I think that your Honor is referring to the related to clause. Correct. And I think to begin with, that wasn't a clause. The defendant agreed to these instructions. They were jointly prepared by the government. They're jointly submitted by both parties. The government concedes, and conceded in this briefing, concedes that the related to language sweeps in relationship in terms of potential, relationship in terms of actual emails. It goes well beyond the statute. And it goes well beyond what would be commercial electronic mail messages because it kicks up these relational emails, and it does that. The issue here is, though, is whether there's plain error because there was never, these just aren't relationship in transactional emails. I don't understand what you're saying. You're saying it's not relational emails. They're not just two kinds, commercial or relational. Well, I think there's, the statute, no, there's obviously, there's other kinds. There's noncommercial emails, there are. So what you did, I mean, I don't understand why you even asked for related to. Your Honor, I don't. What was the reason? I think the reason is to sort of avoid a confusion with the jury, to give them sort of an, because. A confusion from what? I mean, the statute says commercial email, and it defines it, and it accepts from it a relational or transactional kind of relationship, which isn't at issue here at all. I think, Your Honor, I don't know why the parties agreed to this particular language as opposed to just saying, following the precise words of the statute. But I think that the only problem, leaving aside the relationship and transactional issue, which I think just wasn't an issue here, the only potential problem is if it broadened the idea of whether the primary purpose was advertisement or promotion. If the jury could have found the primary purpose was related to a product or service. But isn't it fair to say, counsel, that it is highly improbable that a jury could have, based on this statute, found the defendant guilty as that statute is drafted. It's really easy to see how they could find the defendant guilty on the jury instruction as that was ultimately drafted. And maybe it gets back to Judge Corman's point. Maybe this was, again, ineffective assistance of counsel, because the reality is the statute and the jury instruction have little in common with one another because you've created a whole different category here that this defendant was swept into that would not have been covered by the statute. Well, I don't think that's true, Your Honor. Let me give the argument. And granted, this was not the argument that was made at trial because this just wasn't an issue at trial at all. That's why the ineffective assistance of counsel issue is. Well, it's a different defense. The defense was someone else did it, my mom, my kids. But the argument is that these e-mails, they are promoting and advertising, primarily promoting and advertising the defendant's website, the defendant's website for gathering information. The point of these e-mails is. There's only one e-mail, right, that's the subject of this case? Yeah, the November 23rd. There were multiple e-mails. It's the same. And what in that even fits the definition of primary purpose? The primary. That's his commercial advertisement. Because the primary purpose of that e-mail, Your Honor, is to get someone to click on that link. The whole reason for sending it. Now, they do it through lies, through misrepresentations. If he puts something like I'm a handsome young guy, could you please click on and get in touch with me? He would want people to click onto his computer, but that wouldn't violate this particular statute. Well, Your Honor, if I may, there's two issues I think. Let me try to unpack because there's whether his website is a product or service and whether the e-mail is advertising it, promoting it, trying to get someone to go to it. I think here it's clear with respect to whether. You're saying it has a commercial purpose because he wants somebody to e-mail him back. He wants someone. His website, which is the form mail website for gathering information, that's a service. Because what it's doing is it's gathering up. You go to this website. You type in billing information, credit card, and so forth. The website, the form mail company, processes that information, spits out an e-mail that goes to the defendant. The defendant then takes that information and engages in commercial transactions using the fake credit card. It's stolen credit cards. This is sort of Rube Goldbergian kind of logic. I'm looking at you chose to rest, if you would have rested on an earlier e-mail. There's a main e-mail. Yeah, but that's not what the count of conviction is based on. No, I'm just talking about the November e-mail. Yes, what is it? We apologize for the inconvenience, but your information needs to be updated. And then in order to enjoy your American Online Experience account, you must enter member information within 24 hours and it tells them how to do it. And if you need further assistance, call our billing department. I don't see how that satisfies the statutory definition that the electronic message, with the primary purpose of which is the commercial advertisement or promotion of a commercial product or service. And, indeed, the jury instruction didn't require the jury to find that the e-mail contained an advertisement or a promotion. Like the statute does require. Because of the related to. Yeah, that's what you added into it. I think the answer to that, and then I'll come back to the e-mail itself. I think the answer to that is because advertise and promote, they are broad terms. And I think we have in our head a certain, it's what's on TV or it's what's on the back of the bus, but advertise and promote, it's putting out there, it's furthering, it's informing people, it's notifying people about something, that's all an advertisement is. It doesn't have to say, buy my product, it's the best product out there. But, counsel, this is a criminal charge we're talking about here, not a civil matter. And in a criminal case, someone needs to be able to look at the statute and understand clearly what you cannot do. I'm speaking generally. In this case, the government has expanded the jury instruction to include related to items that are never contemplated in the statute and do not require the jury to find an advertisement. How can you square that? Admittedly, there was nothing raised, but this is a plain error issue at this point. So, if we find that this impacts on the fairness of the system and the administration of justice, aren't we justified in reversing this matter based on the jury instruction alone? Were you to find that it was error, and I understand you think it's broader, I think just in the plain error analysis, the defendant has to have been relevant to this proceeding. The whole idea of plain error analysis is that the defendant didn't raise it at the trial. It would have to have affected substantial rights. It has to have been that there was some argument being made that this would have had a bearing on it. And this just wasn't the defense. The defense didn't have anything to do with the nature of the emails, the nature of his scheme. The defense was, someone else did this. So, it just didn't have any bearing on what was actually going on at the trial. And I think, frankly, that's my guess of why it wasn't objected to, because it just didn't matter to this trial. So, it doesn't really affect the defendant's substantial rights under the plain error analysis. It doesn't impact the fairness of the proceeding under the fourth clause. So, you're saying that if the statute criminalizes Conduct A and the jury instruction charges Crime B, that the fact that the person is convicted of Crime B has nothing to do with fairness and administration of justice? Well, no, Your Honor, because I'm also arguing that the evidence would be sufficient to sustain a conviction under the Kansman Act. Leaving aside the problem with the jury instruction, because the evidence would be sufficient to sustain a conviction under, say, an instruction that just tracked precisely the language of the statute, we don't have, it's not an issue of the defendant was convicted of a crime that doesn't exist. So, I think... Well, in a way, it does. I mean, you've got a conviction on these other grounds, of course. Right. And that's not affected by this. This guy's going to jail, is in jail, for a lot of crimes. We're talking about a specific one. And the question here is, under our jurisprudence, can you make this jury charge on this statute and have it be a lawful jury instruction on which someone can be convicted? Because it really is Crime A versus Crime B, isn't it? Your Honor, except the extent we conceded that it could have convicted them based on transactional, that a transactional email would have come within this, an email from a legitimate, two parties in a legitimate relationship and so forth. Except for that part, which just doesn't apply at all to this email. I think the rest of the instruction leaves behind the advertisement, the promotion or advertisement of commercial product or service. But the government expanded this instruction, it seems to me, because it was worried that it couldn't convict him under the language of the statute. Isn't that a fair reading? Your Honor, I don't think that that's the case. There's no record on why the parties agreed to this. So I can't. You were trial counsel, I guess. I wasn't trial counsel, so I don't. But I think the answer is that this was, it was an attempt to, it was a new statute, and it was an attempt to give something that the jury could deal with. This is what happens when you have a kitchen sink approach. This was a classic fraud case. That's what this is about. You have him convicted of about eight other counts that clearly fit what he does. Now you're taking a statute that, to me, is not so clearly applicable to the fact of this case. You throw it into the case for no apparent reason, and you're forcing us to reach essentially what I regard to be, is a very close question, if it's even close, as to whether or not there's sufficient evidence to prove that he's guilty of a crime. Why is it necessary to go through the U.S. Code and pick out every conceivable statute when you have clear statutes that govern exactly what happened here? Your Honor, I think at the time this was a new statute. When Congress passed this statute, it said. I know, but you had all these other statutes. This is a clear mail fraud. It's open and shut, and you have these other counts that you have. This is a stretch. Just because it's a new statute, you had to throw it into the indictment. You wouldn't even retry this case. I guarantee you if we were to reverse on the jury instruction, you wouldn't even retry the case. That may be true because the other counts are different. It is true. You know it's true. Okay, counsel. Thank you, Your Honor. Mr. Tanaka, do you have anything to say? Sometimes the better part of wisdom is not to argue yourself out of an adjournment. Just one observation, and I'll sit down. But you asked me earlier whether this Court could remedy what they saw as an absurd calculation of loss. And it occurs to me that that's what an appellate court is for. If you see a clear error, then. Well, an appellate court is not a court of first instance. In the place in the first instance, it's very costly to the system to sit back, roll the dice, and if the dice don't come out in your favor, then come up with a clever argument on appeal and then say, oh, goodness, let's just send it back and start over again. I mean, the system isn't designed that way. Well, let me suggest that the first place that. I suggested that the better part of valor might be just simply. Let me suggest that I should have not said anything. There's an old Spanish phrase, en boca cerrada no entran moscas. You might want to consider that one. If you could translate that for me, Your Honor. Flies do not enter a closed mouth. Thank you, counsel, both of you. The matter just argued will be submitted. The Court will take a brief recess before resuming the calendar. All rise.
judges: Rymer, Smith, Korman